Ryan Joseph FINCHER, Appellant,

v.

The STATE of Texas, State.

No. 2–97–755–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 22, 1998.

Rehearing Overruled Dec. 3, 1998.

 

David B. Lobinger, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, C. James Gibson, Timothy Bednarz, Fred Rabalais, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

Before LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

## OPINION

LIVINGSTON, Justice.

Appellant, Ryan Joseph Fincher, appeals his capital murder conviction for the murder of Andrew Kline. Appellant presents two points of error. In the first point, he claims the trial court erred in denying his request for a continuance in order to depose the State's "surprise" witness and in allowing the witness to testify without the continuance. Second, appellant contends the trial court erred by not submitting a jury charge on the issue of "independent impulse." We affirm.

## BACKGROUND

In late February 1996, Andrew Kline was working at the Mansfield Winn–Dixie. In the early morning hours of February 27th, the store manager told Kline to drive to another store and pick up some bailing wire. Kline got lost and sought directions from passing motorists. Brandt Pankey, Wade Burns, and appellant stopped to talk with Kline.

After giving Kline incorrect directions, the trio decided to rob him. They stopped Kline and took him to a nearby creek. There, they threatened Kline with a pellet gun, which resembled a .357 revolver, and stripped and beat Kline. While Kline was attempting to escape, Pankey and appellant got into Kline's truck and ran him over. Kline was left in the creek bed and later died from his injuries.

After his arrest, appellant was housed with another inmate, Alfred McDonald. Appellant confessed his involvement in Kline's murder to McDonald. Appellant confided that he participated in the event and had encouraged Pankey to run Kline down.

On the Thursday preceding trial, the State learned of appellant's confession to McDonald. The following morning the State interviewed McDonald and decided to include him as a witness. Appellant was immediately notified of McDonald's inclusion. On Monday morning, appellant sought a continuance to interview and investigate McDonald or to prohibit his testimony. The trial court denied the request for a continuance and McDonald later testified.

## MOTION FOR CONTINUANCE

Granting or denying a motion for continuance is within the trial court's sound discretion. *See Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex.Crim.App.1995). To establish an abuse of discretion in refusing to grant a motion for continuance, the defendant must show he was prejudiced by his counsel's inadequate preparation time. *See id.*

Appellant contends that the trial court's denial of the continuance rendered him unable to investigate McDonald's back-

ground and motives, but he fails to establish any actual prejudice. In fact, appellant interviewed McDonald and obtained a criminal history report. Appellant also interviewed members of the District Attorney's Office regarding whether McDonald had received any favorable treatment. The mere assertion that counsel did not have time to adequately investigate McDonald's background and motives for providing potential evidence, without any showing of actual harm, fails to establish an abuse of discretion. *See Heiselbetz*, 906 S.W.2d at 512 (citing *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex.Crim.App. 1986)).

Appellant further contends the trial judge erred in allowing McDonald to testify. The decision to allow a witness who was not on the State's witness list to testify is also a matter within the court's discretion. *See Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Among the factors a reviewing court considers in determining whether there has been an abuse of discretion are: (1) a showing of bad faith on the part of the prosecutor in failing to disclose the witness's name before trial; (2) whether the defendant could have reasonably anticipated that the witness would testify, although his or her name was not included on the witness list. *See id.* (citing *Hightower v. State*, 629 S.W.2d 920, 925 (Tex.Crim.App. [Panel Op.] 1981)).

The record simply does not reflect bad faith on the part of the prosecutor. As was the situation in *Stoker*, the witness was a "surprise" to both sides. *See id.* Here, the State's notification, though close in time to trial, was provided in a manner that does not demonstrate bad faith. Appellant's first point is overruled.

## JURY INSTRUCTION

Appellant's second point alleges error in the trial court's jury charge. Specifically, appellant challenges the court's refusal to instruct the jury on the theory of independent impulse even though the charge contained an instruction on accomplice liability.

"Independent impulse" embraces the theory that the accused, although admittedly intent on some wrongful conduct, did not contemplate the extent of criminal conduct actually engaged in by his fellow conspirators, and thus cannot be held vicariously responsible for their conduct. *See Mayfield v. State*, 716 S.W.2d 509, 513 (Tex.Crim.App. 1986). Independent impulse is a defense to the theory of accomplice liability. Section 7.02(b) of the penal code defines accomplice liability and states:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, *if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.*

Tex. Pen.Code Ann. § 7.02(b) (Vernon 1994) (emphasis added).

Although the trial court did not submit the independent impulse theory to the jury, the instruction required jurors to find "that such offense [murder] was committed in furtherance of the unlawful purpose to commit robbery and was an offense that [appellant] should have been anticipated as a result of the carrying out of the agreement." The given charge required the jury to acquit appellant if the offense of murder was beyond his contemplation. This charge tracks the language of the penal code and also requires a finding that murder was not beyond appellant's contemplation. When a refused charge is adequately covered by the charge given, no harm is shown. *See Davis v. State*, 651 S.W.2d 787, 792 (Tex.Crim.App. 1983). Because the given charge adequately covered the refused charge, we overrule appellant's second point and affirm the trial court's judgment.

DAUPHINOT, J., filed a concurring opinion.

DAUPHINOT, Justice, concurring.

Although I concur in the result reached by the majority, I respectfully disagree with

their conclusion that because the State did not act in bad faith, Appellant was not entitled to a continuance in order to prepare for the witness's testimony. Such reasoning leads to an untenable rule that when an attorney of the stature of Fred Rabalais, whose reputation for honesty and the highest standards of integrity is well known, is involved, the trial court is never obligated to grant the opposing party additional preparation time when an unexpected witness emerges.

It is undisputed that Appellant's jail mate, McDonald, volunteered to testify against Appellant on Thursday evening before trial the following week. The State immediately faxed this information to Appellant on Friday morning. The following Monday the trial court heard and denied Appellant's motion for continuance. Nothing in the record even hints that Appellant could have reasonably anticipated that McDonald would testify against him. Indeed, the State had no reason to anticipate McDonald would be a witness until Thursday evening.

It is common knowledge that an attorney is prohibited from interviewing a criminal defendant without permission of that defendant's attorney.[1] Appellant's attorney, therefore, needed time to obtain permission from McDonald's attorney so he could conduct his own interview of McDonald. Appellant was not required to rely solely on the State's representations without doing additional investigation. Failure to investigate is a ground for finding ineffective assistance of counsel.[2] Voir dire began on Tuesday. Any trial attorney and any trial judge is well aware that both sides must have developed the theory of their case by the time voir dire begins.

The framers of the Texas Rules of Civil Procedure have long recognized the importance of trial preparation. Rule 166b sets a thirty-day deadline for supplementing a party's witness list.[3] Thirty days is considered the minimum time necessary to deal effec-

tively with notice of a new witness unless the trial judge finds good cause for deviating from the well-established rule. Trial by ambush has long been abhorred in both civil and criminal prosecutions. Surely a capital murder defendant is just as entitled to adequate trial preparation as is a party in a civil case. The danger of inadequate trial preparation through the fault of neither the State nor the defense greatly outweighs the slight inconvenience of delaying a trial for a few days. This danger cannot be justified on the ground that the State acted in good faith.

The highest courts in our state have examined the rules of evidence and determined that our judicial system is better served by adopting uniform rules of evidence. We should also look carefully at rule 166b, consider its bases and its policy implications, and hold that a criminal defendant is entitled to a reasonable time to prepare for trial after the State learns that the discovery it has provided is either incomplete or no longer accurate. I would hold that the trial court erred in denying Appellant's motion for continuance.

It is rare that a party can show a court in advance the specific harm he will suffer if he is denied a continuance. But a motion for new trial is often a sufficient vehicle to prove harm. Because Appellant did not provide any record of how he was prejudiced by his counsel's inadequate preparation time or of what benefit he would have attained by having more time to prepare for trial, I concur in the majority's result.

---

1. See Tex. Disciplinary R. Prof'l Conduct 4.02(a), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex State Bar R. art. X, § 9).

2. See Strickland v. Washington, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

3. See Tex.R. Civ. P. 166b(6).